GUITAR TRUST ESTATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35102. Promulgated April 21, 1932.

1214

*J. S. Y. Ivins, Esq., Eustis Myers, Esq.*, and *R. C. Winters, C. P. A.*, for the petitioner.

*F. R. Shearer, Esq.*, for the respondent.

1218

## 1222

OPINION.

Black: The principal issue involved in this proceeding is whether petitioner is a trust taxable, if at all, under the provision of section 219 of the applicable revenue acts, or whether it is an association taxable as a corporation.

Section 2 (a) (2) of the applicable revenue acts says: " The term ' corporation ' includes associations, joint stock companies and insurance companies." Clearly, petitioner is not a joint stock company such as the Supreme Court held taxable as a corporation in *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110. In that case, R. M. Waggoner and associates entered into a written agreement which provided for the formation of an " unincorporated joint-stock association to be known as Burk-Waggoner Oil Association " and the agreement entered into carried out the purposes of the parties. The Supreme Court, in discussing the nature of joint stock companies, said:

Unincorporated joint stock associations, although technically partnerships under the law of many states, are not in common parlance referred to as such. They have usually a fixed capital stock divided into shares represented by certificates transferable only upon the books of the company, manage their affairs by a board of directors and executive officers and conduct their business in the general form and mode of procedure of a corporation. Because of this resemblance in form and effectiveness, these business organizations are subjected by the act to these taxes as corporations.

We think it requires no argument to hold that under the above quoted definition of joint-stock companies, petitioner does not fit into the classification. It had no fixed capital stock; it issued no shares represented by certificates transferable only upon the books of the company; it had no board of directors and executive officers, unless the three trustees might be classified as such; and it did not conduct its business in the general form and mode of procedure of a corporation.

In *Hecht* v. *Malley*, 265 U. S. 144, the Supreme Court, in discussing the meaning of the word " association " as used in the applicable revenue act, said:

The word " association " appears to be used in the Act in its ordinary meaning. It has been defined as a term " used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise."

In applying the above definition to one of the trusts which it had before it, the court held that the Hecht Real Estate Trust, which had been established by the members of the Hecht family upon real estate in Boston used for offices and business purposes, *which they owned as tenants in common*, was an association taxable as a corporation. On that point the court said:

The Hecht Real Estate Trust was established by the members of the Hecht family upon real estate in Boston used for offices and business purposes, which they owned as tenants in common. It is primarily a family affair. The certificates have no par value; the shares being for one-thousandths of the beneficial interest. They are transferable; but must be offered to the trustees before being transferred to any person outside of the family. The trustees have full and complete powers of management; but no power to create any liability against the certificate holders. There are no meetings of certificate holders; but they may, by written instrument, increase the number of trustees, remove a trustee, appoint a new trustee if there be none remaining, modify the declaration of trust in any particular, terminate the trust, or give the trustees any instructions thereunder.

In the instant case no certificates of beneficial interest were issued and the beneficiaries had no power to sell or dispose of their interest in the trust corpus. The trust instrument specifically provided:

The beneficiaries hereunder will have no voice in the control and management of said estate and they shall not mortgage or encumber their beneficial interest, or in any wise dispose of said interest, until they have received same from the trustees.

Also, the instant case does not present a situation where parties owning property as tenants in common (as in the Hecht Real Estate Trust) voluntarily associate themselves together under the trust agreement to operate the property for business purposes. The eight children of the settlors of the trust in the instant case owned no interest whatever in the property at the time the trust deed was executed. They knew nothing about the plans for its execution until after its actual execution. It is clear that the purpose to be accomplished by the execution of the trust deed was to make a donation by the settlors of the trust to their children of an equal interest in their property, after they had reserved a share each to themselves, and to accomplish this without dividing the property. This purpose

was explained by John Guitar, Sr., one of the settlors of the trust, in his testimony at the hearing as follows:

Q. Mr. Guitar, will you explain to the Board what the reason was for the creation of this trust?

A. Well, my wife and I had accumulated a right smart property, and had a large family of children, and they were all getting grown, and it kind of puzzled us how to best handle the property for the children. We first thought we would divide it up by deeding a special piece to each child, but saw we couldn't make a proper division that way by doing that; and we finally decided the best thing to do was to deed it to a trustee to carry it on the same way, each child having an interest in the property. We wanted each child to have the same interest exactly that the other one had.

This sort of an arrangement is, we think, very different from that which was made by members of the Hecht family when, as owners and tenants in common of real estate in Boston, used for offices and business purposes, they voluntarily associated themselves together in the Hecht Real Estate Trust to hold and operate the property for business purposes. We think the distinction between that situation and the one we have before us in the instant case, was well stated by the court in *Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43, wherein the court said:

* * * A distinction is to be made between an agreement between individuals in the form of a trust and an express trust created by an ancestor, although they may have some features in common. The controlling distinction is that one is a voluntary association of individuals for convenience and profit, the other a method of equitably distributing a legacy or donation. Congress has recognized this distinction, classing the former as associations, to be taxed as corporations, and at the same time providing for a separate and distinct method of taxing the income of estates and trusts created by will or deed, classing them together for that purpose. Section 219, Revenue Act of 1921 (42 Stat. 246).

We followed *Blair* v. *Wilson Syndicate Trust*, *supra*, in *Wilson Trust*, 20 B. T. A. 549.

In our judgment the evidence shows that the chief purpose of the trust deed which we have before us for construction was the equitable distribution of donations which the settlors desired to make to their children without the necessity of immediate partition. We think petitioner was the sort of an entity which Congress intended to tax as a trust under the provisions of section 219 of the applicable revenue acts. We, therefore, sustain petitioner's assignment of error (a) and hold that respondent erred in seeking to tax petitioner as an association taxable as a corporation.

The next issue for our determination is whether or not the income of the trust or any part of it in each of the taxable years is, under section 219 of the applicable revenue acts, taxable to the petitioner

as a fiduciary or whether the income was taxable to the several beneficiaries in proportion to their respective shares. Petitioner in its petition alleges that it filed information returns on Form 1041, giving information as to the correct amount of the income of the trust for each of the taxable years and showing the beneficiaries among whom it was apportioned and that each of these beneficiaries in turn reported the amount which was apportioned to him and that this was the correct method of handling the matter under section 219 of the applicable revenue acts.

Plainly, under the provisions of section 219 of the applicable revenue acts, the income of a fiduciary may fall into several classifications:

(1) Income which the fiduciary is under a mandatory duty to accumulate and hold for future distribution under the terms of the will or trust. This kind of income is taxable to the fiduciary and not to the beneficiaries.

(2) Income which the fiduciary is under a mandatory duty to distribute " periodically, whether or not at regular intervals " says the 1921 Act. " Currently " say the 1924 and 1926 Acts. So much of the income as falls within this classification is taxable to the beneficiaries and not to the fiduciary. And this is true, whether the income is actually distributed or not. *Estate of Henry Mayer*, 16 B. T. A. 1164.

(3) Income which in the discretion of the fiduciary may be either distributed or accumulated.

The 1921 Act does not by express language contain this latter classification (3), but this Board has construed it to have that meaning. *William E. Scripps et al., Trustees*, 1 B. T. A. 491; *Mary L. Barton*, 5 B. T. A. 1008; *Brown & Ives, Trustees*, 2 B. T. A. 936. This classification is expressly made in section 219 of the 1924 and 1926 Acts. Where this kind of income comes into the hands of the fiduciary and he exercises the discretion vested in him to accumulate, the income is taxable to the fiduciary and not to the beneficiaries. *John D. Rogers*, 16 B. T. A. 368. But in cases where the fiduciary exercises his discretion to distribute, then all such income as is paid or properly credited during the taxable year to the beneficiary is taxable to the beneficiary and not to the fiduciary. *William E. Scripps et al., Trustees, supra.*

Into which one or more of the above classifications does petitioner's income fall? To answer this question will require an examination of the original trust deed dated December 30, 1921, and the purported supplement to the trust deed bearing the alleged date of January 10, 1922.

The original trust deed contains the following paragraph with reference to income:

The said trustees shall make an accounting with the beneficiaries herein once each year during the terms of this trust and the trustees shall, *at their option,* declare a dividend out of any profits that may have accrued to said estate, which may be paid to each of the beneficiaries herein named, or retained in the business as the trustees may determine. [Italics supplied.]

Under the above quoted provision it is plain that the trustees are not under any mandatory duty to distribute the income of the trust, but are given the option to either accumulate income or to declare dividends and pay them. If this is the clause which was operative during the taxable years, it would bring the income of the fiduciary within classification (3) which we have enumerated, and the question as to whether the income is taxable to the fiduciary or is taxable to the beneficiaries depends upon how the trustees exercised their discretion—upon what they actually did. Petitioner contends however . that the supplement was operative during each of the taxable years and not the above quoted clause of the original deed, and that the trustees were required under the supplement to distribute the income and therefore the income was taxable to the beneficiaries and not to the fiduciary. Respondent disputes the effectiveness of the alleged supplement at any time, and contends that it was a mere nullity, and that, acting under the authority of the original trust deed, the trustees exercised their option to accumulate income rather than to declare dividends, and therefore all the income for each of the taxable years is taxable to the fiduciary except comparatively small amounts which were actually distributed to the beneficiaries in the respective taxable years and which are not in dispute. In the alternative, petitioner contends that even if the supplement were not effective, the action of the trustees in dividing the net income in each of the taxable years into ten equal parts and crediting same to the invested capital account of each of the beneficiaries, was, under the above quoted paragraph of the original deed, an exercise of the discretion to declare and pay dividends and was equivalent to an actual distribution and made the income taxable to the beneficiaries in proportion to their respective shares and not to the fiduciary.

Before passing upon these respective contentions of respondent and petitioner, we shall decide whether or not the alleged supplement to the original trust agreement was effective and, if so, when it became effective. If it was effective in all the taxable years, then we think it placed a mandatory duty upon the trustees to distribute currently the income of the trust to the beneficiaries and that such income would be taxable to the beneficiaries and not to the fiduciary, and this would be true whether such income was actually distributed or not. *Estate of Henry Mayer, supra.*

Said supplement purported to substitute for the already quoted paragraph of the original trust deed a paragraph reading as follows:

The said trustees shall make an accounting with the beneficiaries herein once each year during the term of this trust, and each of the ten beneficiaries is to be credited with one-tenth of the annual income of this trust estate or charged with one-tenth of the loss whichever the case may be, *this income may be drawn out at any time by the beneficiaries*, the beneficial interest, however, must remain intact until the final termination of the trust and is subject to all the conditions named in the original deed of trust. [Italics supplied.]

This supplement purports to have been executed and delivered only 11 days after the original trust deed and practically contemporaneously therewith, but evidently this is not true.

This purported supplement mentions as a part of its heading the recording of the original trust deed and gives the date of one of its recordings, to wit, December 23, 1922, which was nearly one year after the date of the execution of the original trust deed, to wit, December 30, 1921. Manifestly, if the purported supplement was in fact executed on the date which it purports, to wit, January 10, 1922, it could not have made mention of the recording of the original trust deed, which took place in one of the counties on December 23, 1922. The supplement can not be treated as having been contemporaneously executed with the original trust deed.

The certificate of recording attached to this supplement shows that it was first filed for record in Taylor County, Texas, on March 12, 1924, and was duly recorded the next day, March 13, 1924. The date which this supplement bears manifestly not being the correct date of its execution, and no evidence having been offered showing the true date on which it was executed and having no information on that point, we think that the earliest date that it should be held to be effective is the date when it is shown to have been filed for record, to wit, March 12, 1924. We hold, therefore, that the taxable years 1922 and 1923 are unaffected by it, and that as to those taxable years the rights and obligations of the parties must be determined by the original trust deed. This, as we have already stated, created a trust wherein was vested in the trustees the *option* to distribute or not as they saw fit. Was the manner of crediting on the books of petitioner to the " invested capital " accounts of the several beneficiaries within the taxable years 1922 and 1923 such a " proper paying or crediting " to the beneficiaries, within the meaning of the law, as makes the income taxable to the beneficiaries and not to the fiduciary?

Respondent contends that the alleged credits to the beneficiaries were not of such a nature as to finally and irrevocably place the amounts at the disposal of the individual beneficiaries. " The fact that they made no attempt to withdraw the amounts except in rel-

atively small amounts, coupled with the fact that the credits were not made to individual accounts payable but to the same 'invested capital' accounts to which the corpus of the trust had theretofore been credited," says respondent, "indicates unmistakably the intention to retain the amounts in the business rather than to subject the amounts to the free disposition of the individual beneficiaries."

We think respondent must be sustained in these contentions. Petitioner relies on *William E. Scripps et al., Trustees, supra*. An examination of the facts in that case will show that the settlor of the trust made it mandatory on the trustees to distribute 50 per cent of the dividends from certain stocks to his children and left it in their discretion as to whether they would distribute the remaining 50 per cent of the dividends to said children or use it in the improvement of the property from which the dividends were derived. In all the taxable years involved in that proceeding and in years prior thereto the trustees had not only distributed the 50 per cent of the dividends which had been made mandatory upon them, but also had distributed in each year the remaining 50 per cent of the dividends as to which they had a certain amount of discretion. On these facts we held that the entire income of the trust was income to be "periodically" distributed to the beneficiaries within the meaning of the Revenue Acts of 1918 and 1921 and was taxable to the beneficiaries and not to the fiduciary. Only by holding in the instant case that the credits made in 1922 and 1923 to the "invested capital" accounts of the several beneficiaries were in the same category as the actual distributions of income which the trustees made in the *Scripps* case, would we be justified in holding that the same rule applied to both cases. Such a holding we do not think would be justified.

The situation which we have in the instant case is also different from that which existed in *Willcuts* v. *Ordway*, 19 Fed. (2d) 917, wherein the court held that the action of the trustees in dealing with the income of certain minor beneficiaries was equivalent to a distribution to them within the taxable years and that the income was therefore taxable to the beneficiaries and not to the fiduciaries. In that case the facts showed that the trustees purchased, with the surplus income of the minor beneficiaries within the years it was available to them, separate securities and within the same years segregated these securities from the corpus of the estate and kept them separate as the property of these minor children. The court held that this action was a "distribution" within the taxable year within the meaning of section 219 of the revenue act.

In the instant case we have no such facts before us. There was no investing of the income of each beneficiary in separate securities and segregating these securities from the rest of the corpus of the estate. As respondent points out, there was not even a crediting

to the personal account of each beneficiary, but only a crediting to the "invested capital" account of each beneficiary, thus evidencing an intention to keep these profits in the business rather than to distribute them.

Under the circumstances which we have narrated, we think the trust income credited to the invested capital accounts of the beneficiaries in 1922 and 1923 was not a proper paying or crediting within the meaning of the law and is taxable to the fiduciary and not to the beneficiaries. Cf. *Brown & Ives, Trustees*, 2 B. T. A. 936.

As to the taxable years 1924, 1925 and 1926, we hold that the supplement to the original trust deed which was executed by the settlors of the trust, and appears to have been acquiesced in and acted upon by all the parties, was effective from the date it was filed for record and governs the taxable years 1924, 1925 and 1926. For reasons which we have already stated, we can not hold it effective for any time earlier than the date of its recording because plainly it was not executed on the date which it purports to bear. Under the paragraph of the supplement relating to disposition of income, and which was to take the place of the paragraph in the original trust deed relating to the same subject matter (both of which we have already quoted), we hold that it was mandatory upon petitioner to make annual distribution of its income to the beneficiaries and that petitioner is entitled to take as deductions under section 219(b)(2) of the Revenue Acts of 1924 and 1926, the amount of the net income shown by its books at the end of each of the taxable years 1924, 1925 and 1926. This is true, even though the crediting of the income to the "invested capital" account of the respective beneficiaries on petitioner's books did not, as we have already held, amount to an actual distribution of such income to the beneficiaries. For, where the trust instrument makes it mandatory on the trustees to distribute the income "currently" to the beneficiaries, it is taxable to them and not to the fiduciary, whether it is actually distributed or not. *Estate of Henry Mayer, supra*, and other cases there cited.

The next issue relates to penalties asserted by respondent for all the taxable years, except 1926, as to which respondent has conceded error in assessing the penalty.

Our holding that petitioner's income for 1924 and 1925 is taxable to the beneficiaries and not to the fiduciary does away with the issue of penalties for those two years, for as the penalties asserted are ad valorem penalties, there can be no penalties if there is no tax.

This leaves us only to decide whether the Commissioner's assessment of penalties for 1922 and 1923 should be approved. In determining the validity of the respondent's action in assessing these penalties, it must be remembered that the fiduciary reported income

on a calendar year basis and must, therefore, under the provisions of section 227 (a) of the Revenue Act of 1921, make its return " on or before the 15th day of March." This section allows the Commissioner to grant extensions of time for filing returns, the provisions of the 1921 Act with respect thereto reading as follows:

The Commissioner may grant a reasonable extension of time for filing returns whenever in his judgment good cause exists and shall keep a record of every such extension and the reason therefor.

The return required by the statute is one which will show specifically the items of gross income and the deductions and credits allowed by the revenue acts. The law makes no provision for so-called " tentative " returns, which have become more or less familiar by virtue of the fact that the respondent is authorized to grant an extension of time for filing a return. This authority in the respondent to grant extensions is, no doubt, the basis for his regulations that a taxpayer may be required to file a tentative return on or before the due date in procuring an extension of time. Article 443, Regulations 62 and 65.

In this proceeding the trustees, for each of the taxable years 1922 and 1923, filed on or prior to the due date the so-called " tentative " returns. We find from a consideration of all the evidence that, for each of the years 1922 and 1923, prior to filing the tentative returns petitioner had secured permission from the Commissioner to file completed returns at a later date and that such completed returns were filed within the time as extended by the Commissioner. Under these circumstances no penalties should be imposed and we sustain petitioner's assignment of error (c).

It is unnecessary for us to rule upon petitioner's assignments of error (e), (f), (g) and (h), because they relate to deductions claimed by petitioner in years in which we have held the fiduciary is not taxable on the income involved. Even if we decided these issues in favor of respondent, it would only serve to increase the taxable income of the several beneficiaries, because we have already held that under the supplement effective for 1924, 1925 and 1926 all the net income of the estate was distributable to the several beneficiaries and was therefore taxable to them and not to the fiduciary. We do not have the beneficiaries before us and hence it would be irrelevant to decide the above issues.

Respondent's alternative contention to the effect that if the Board finds and determines that the petitioner is taxable as a fiduciary, the petitioner's taxable net income for each of the years 1922 to 1926, inclusive, has been understated by the Commissioner through failure to include in net income the dividends from domestic corporations which were reported by the petitioner in its information returns, is sustained as to the years 1922 and 1923. In a recomputation of the

deficiencies for those years, such dividends should be included in petitioner's net income and the deficiencies increased accordingly, if it has that effect.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MARQUETTE and SEAWELL dissent.