Guitar Trust Estate v. Commissioner.
Guitar Trust Estate v. Commissioner
Docket No. 107801.
United States Tax Court
1942 Tax Ct. Memo LEXIS 6; 1 T.C.M. (CCH) 312; T.C.M. (RIA) 42688; 12/29/1942
*6 Percy W. Phillips, Esq., 306 Southern Bldg., Washington, D.C., for the petitioner. D. D. Smith, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner in this proceeding challenges respondent's determination of deficiency in its income and excess-profits tax in the amounts of $10,618.61 and $8,936.40, respectively, for the year 1937. The principal question for determination is whether petitioner is taxable as an association or as a trust. If it is found to be the latter, there is a question of whether petitioner is a distributable or discretionary trust. Petitioner also contends that the principal issue is res judicata. Respondent on brief concedes that petitioner's delinquent filing of the capital stock tax return was effective to eliminate the excess-profits tax liability formerly asserted by respondent. Findings of Fact Petitioner during the years in question was engaged in business with its principal office at Abilene, Texas. A fiduciary income tax return and a capital stock tax return for the year 1937 were filed for petitioner with the collector of internal revenue in Dallas, Texas. The trust instrument by which the petitioner *7 trust was created, was executed by John Guitar, Sr., and his wife, Laura O. Guitar, on December 30, 1921. Prior to the execution of the instrument John Guitar, Sr., and his wife accumulated considerable property which under the laws of Texas was owned jointly by the members of the marital community. John Guitar, Sr., was engaged in the cottonseed oil, cotton gin, ranch and farming business. As their eight children were all becoming grown the parents considered the best means of handling the property for their benefit. At first they considered dividing the property by deeding a special piece to each child, but later decided that this plan might be difficult to execute and put into effect. They finally decided that the best thing to do would be to deed the property to trustees who would carry on the business as it had been before and each child would have an equal interest in the property. The two oldest boys, John Guitar, Jr., and Repps B. Guitar, had been in business with their father for years, were grown men, and were acquainted with the business. It was determined by John Guitar, Sr., to make them trustees along with himself. John Guitar, Sr., personally drafted the instrument *8 without seeking advice of counsel. Prior to execution of the instrument the children were not advised regarding the intention of their parents, but immediately thereafter they were informed of its execution. The provisions of the trust instrument are set out in part at 25 B.T.A. 1216, 1217. Some time after the instrument was executed the grantor duly executed a supplement thereto which appears at 25 B.T.A. 1218. That supplement purported to make mandatory the distribution of the annual trust income which under the original instrument had been discretionary with the trustees. Under the original trust instrument the trust properties were allocated equally among the ten beneficiaries and the following entries were made on the books of the trust under date of December 31, 1921: Jno Guitar Invested Capital, (Tr.)
$1,079,335.80
Jno. Guitar, Sr., Invested Capital
$107,933.58
Mrs. Jno Guitar, Invested Capital
107,933.58
Jno. Guitar, Jr., Invested Capital
107,933.58
Repps B. Guitar, Invested Capital
107,933.58
Earl B. Guitar, Invested Capital
107,933.58
Mrs. Virginia Witherspoon, Invested
Capital
107,933.58
Mrs. Laura O. Belcher, Invested Cap-
ital
107,933.58
Miss Katherine Guitar, Invested
Capital
107,933.58
Miss Mary Guitar, Invested Capital
107,933.58
Miss Ruth Guitar, Invested Capital.
107,933.58
*9 John Guitar, Sr., filed fiduciary returns of income for the Guitar Trust Estate for the years 1922 through 1926, taking deductions for the entire net income for those years as distributable to the beneficiaries and reported no tax due by the trust. On December 21, 1927, the Commissioner mailed a notice of income tax deficiency to the Guitar Trust Estate in the amount of $65,791.43 for the years 1922 through 1926, on the theory that the organization was an association taxable as a corporation. On February 16, 1928, the Guitar Trust Estate filed with the United States Board of Tax Appeals an appeal from the notice of deficiency (Docket No. 35102), and assigned as one of several errors the action of the Commissioner in determining the trust to be taxable as a corporation. The Board found and held that petitioner was not an association taxable as a corporation for any of the years 1923 through 1926, that for the year 1922 it was taxable as a discretionary trust, and that because of the supplemental agreement it was a distributable trust for the years 1923 through 1926 and had no taxable income. The Board's Findings of Fact and Opinion are reported in 25 B.T.A. 1213, *10 and modified by a Memorandum Opinion, entered on October 29, 1932. On December 8, 1932, the Board entered a decision that there was a deficiency of $19,194.28 for the year 1922 and that there were no deficiencies for the years 1923 through 1926. Both parties appealed from the decision of the Board to the United States Circuit Court of Appeals for the Fifth Circuit. That court, in its decision, reported at 72 Fed. (2d) 544, on August 24, 1934, sustained the Board in holding that the trust was not an association taxable as a corporation but held that the evidence was insufficient to show that the supplemental agreement executed by John Guitar, Sr., and wife was effectual to change the original trust agreement. The Circuit Court remanded the case to the Board for further hearing on this point and for the purpose of determining the true facts regarding the distribution of income to the beneficiaries of the trust in order to compute the tax liability of the trust by reason of income undistributed by the trustees. The mandate was dated September 18, 1934, and was filed with the Board on September 20, 1934. At that time the petitioner had pending before the Board *11 appeals from the Commissioner's determination of deficiencies for the years 1927, 1928, 1929, 1930, and 1931 on the ground that petitioner was an association taxable as a corporation in those years. The remanded case and the pending appeals were consolidated for hearing and were heard before the Board, which on August 4, 1936, promulgated its Findings of Fact and Opinion, reported at 34 B.T.A. 857. The Commissioner had amended his answers to the petitions for the years 1927 through 1931 and his answer to the amended petition covering the years 1922 through 1926, on January 2, 1935, and January 8, 1935, respectively, by admitting among other things that the petitioner was a trust and not a corporation or association during the taxable year or years involved in each proceeding. In its opinion the Board held that the original trust agreement was not altered by any contract or transaction so as to make mandatory distribution of the annual trust income by the trustees; that the trust was a discretionary trust for the years 1922 through 1931; that the amount credited to the invested capital account of each beneficiary after the close of the taxable year was not *12 properly paid or credited within the requirement of the applicable tax statute and that the amounts so credited to the invested capital accounts of the individual petitioners were not allowable as additional deductions in computing the net income of the trust for the various years involved. Decision was to be entered under Rule 50. On March 18, 1937, after a hearing under Rule 50 the Board entered decisions in accordance with its opinion promulgated on August 4, 1936, as supplemented by its Memorandum Opinion entered on August 28, 1936. On September 14, 1937, petitioner and respondent filed stipulations with the Board setting forth and agreeing to the amounts of deficiency due for each year from 1922 through 1931, and September 22, 1937, the Board issued an order and decision vacating and setting aside its earlier order of March 18, 1937, and ordering and deciding that the correct amount of deficiency for the year 1922 was $19,194.28, all of which had been assessed and paid, and that there was no deficiency and no overpayment of tax for the year 1922; and there were deficiencies in income tax of $9,966.45, $5,466.87, $6,404.23, and $1,104.62 for the years 1923, 1924, 1925, and 1926, *13 respectively. The Board further determined deficiencies for the years 1927 through 1931, respectively, as follows: $5,750.03, $4,104.84, $7,763.15, $2,293.37, and $2,123.54. In the meantime, on March 12, 1937, the trustees and beneficiaries of petitioner trust filed a petition in the 104th District Court of Taylor County, Texas, alleging in part and praying as follows: Your petitioners respectfully represent to the court that contention has arisen as to (a) Whether or not the settlors in said original Declaration of Trust could with the consent of the settlors, trustees, and all the beneficiaries modify the original Declaration of Trust as they did do; (b) Whether or not it is mandatory on the part of the trustees of the original trust estate to follow the provisions of the original Declaration of Trust as to it being optional with them making annual distribution of the net income of said estate as provided therein; (c) Whether or not it is mandatory on the part of the trustees during the year 1922 and each year thereafter to make a distribution of the annual net income of said estate among the beneficiaries under the oral agreement which was atterwards reduced to writing as *14 set out therein. On account of the above set out matters doubt exists to petitioners as to the particular course which ought to be pursued by the trustees for which they bring this suit in equity to obtain a judicial construction of the instruments and ask the court for direction as to the conduct to be pursued by the trustees as well as the beneficiaries. WHEREFORE, your petitioners ask the court to construe said Declaration of Trust as well as oral and [sic] modification thereof and find as a matter of law; (1) That the settlors with the consent of the trustees and beneficiaries had a right to modify the original Declaration of Trust; (2) That the trustees had no option in making an annual distribution of the net income of said estate as provided in the original Declaration of Trust; (3) That it is mandatory on the part of the trustees to make an annual distribution of the net income of said estate during the year 1922 and all subsequent years during the life of said trust; and (4) For general relief. The court entered a decree on March 12, 1937, reading in part as follows: The court finds from the pleadings of the parties hereto and the undisputed evidence that the petitioners *15 are in all things entitled to the relief prayed for. The court further finds as a matter of law that the modification to the original declaration of the trust does not vary the terms of the original trust agreement in so far as it affects the interest of the beneficiaries in the corpus thereof and the court further finds that the modification of said original trust agreement is valid in so far as it directs the annual distribution of the net income of the beneficiaries therein and any construction to the contrary of said original trust agreement and the amendment herein referred to contrary or different from this judgment and decree is contrary to the rule of law and equity in this state and is not valid or binding on the trustees in their duties under the trust agreement and modification thereto and the court finds as a matter of law that the settlors with the consent of the trustees and beneficiaries had the right to modify the original declaration of trust and the trustees had no option in making an annual distribution of the net income of said estate as provided in said original declaration of trust but that it is mandatory on the part of the trustees of said estate to make an *16 annual distribution of the net income of said estate for the year 1922 and all subsequent years of said trust and the trustees of said trust estate, to wit, John Guitar, Jr., Repps B. Guitar and Earl B. Guitar and their successors are hereby directed to in all things make an annual distribution of the net income of said estate for the year 1922 and all subsequent years during the life of said estate. (Signed) W. R. Chapman, District Judge 104th District On March 16, 1937, prior to the entry of the Board's decision on the Rule 50 hearing, petitioner filed a motion in each of the appeals requesting the Board (1) to reopen the case, (2) to permit the filing of the decision entered by the 104th District Court of Taylor County, State of Texas, on March 12, 1937, and (3) to reconsider its opinion rendered August 4, 1936, in the light of the State Court decision. Argument on the motion was had on April 1, 1937, and the Board took the motion under advisement but had not passed upon it by the time the parties came to an agreement and filed their stipulations with respect to the deficiencies due on September 14, 1937. During the year 1937 the petitioner was engaged in the cotton, cottonseed *17 oil, cotton ginning, ranching, oil, and other businesses. John Guitar, Sr., died on April 7, 1936, and Earl Guitar was appointed in his place as trustee. After the death of John Guitar, Sr., the cotton ginning and oil business continued to be handled by John Guitar, Jr., from Abilene, Texas, and Repps Guitar continued to remain at Big Springs, Texas, to handle the ranching business and general business in that territory, while Earl Guitar attended to the compress and rental accounts near Abilene. The beneficiaries of petitioner loaned substantial sums to the petitioner. On December 31, 1921, the petitioner's "invested capital" account, one-tenth of which was credited to each individual beneficiary's "invested capital" account, was $1,079,335.80; on December 31, 1931, the account totaled $2,056,496, and on December 31, 1937, it totaled $2,006,323.86. The increase in the invested capital account between 1921 and 1931 represents for the most part trust income not withdrawn by the beneficiaries. For the years ended December 31, 1931, through December 31, 1937, the petitioner's notes payable, accounts payable, and invested capital were reflected on its books of account as set forth in *18 the following schedule: Accounts
Notes
Payable
Payable
Employees
Trustees
Trustees
Associates
Year
Banks
Beneficiaries
Sundry
Beneficiaries
(Others)
1931
$150,000.00
$133,646.99
$ 83,251.43
$ 79,861.50
$ 48,151.79
1932
100,000.00
133,646.99
116,716.09
107,622.57
37,036.93
1933
170,000.00
171,754.14
132,425.87
90,013.45
26,083.18
1934
198,774.85
103,800.49
172,792.29
18,638.43
1935
345,202.21
48,700.08
134,450.65
69,214.10
1936
448,416.00
10,500.00
16,673.84
55,717.79
1937
70,000.00
499,116.00
10,500.00
39,059.39
101,538.73
Invested
Year
Capital
1931
$2,056,496.00
1932
2,025,004.61
1933
2,082,672.81
1934
2,082,672.81
1935
2,000,672.81
1936
2,024,411.75
1937
2,006,323.86
Petitioner kept a cash book, journal and ledger for the year 1937. During that year withdrawals were made by the beneficiaries and withdrawals were reflected by entries made in the cash book and the individual drawing accounts in the ledger. Prior to December 31, 1937, petitioner estimated a profit for 1937 of $36,000, $4,000 payable to each of the nine living beneficiaries. After the estimate was made *19 the amount withdrawn by each beneficiary during the year was deducted from the $4,000 estimated payable to him or her and the balance was paid to the beneficiaries by check dated December 30, or 31, 1937. In March, 1938, the books of petitioner for 1937 were closed and its profit for 1937 was determined to be $39,397.95 with $4,377.55 determined to be payable to each of the nine beneficiaries and each of the beneficiaries' individual drawing accounts in the ledger credited with that amount. The difference between the amount paid to each beneficiary by cash and by check and the amount determined payable to each beneficiary remained with the trust and was reflected on the balance sheet of the petitioner as an account payable to the beneficiaries. After execution of the trust the several businesses were carried on in the same manner as prior thereto. In the years 1922 through 1926 the three trustees never met together for business purposes and it was not a common occurrence for the trustees to meet in 1937 or in the intervening years. Between 1921 and 1927 John Guitar, Sr., and John Guitar, Jr., occupied offices in the same building in Abilene and sometimes discussed their business *20 transactions together. The manner of conducting petitioner's business by the trustees was the same in 1937 as in the preceding years, each trustee being responsible for his part of the business. Between 1921 and 1932 most of the money used in financing petitioner was borrowed from banks but since 1933 or 1934 the beneficiaries have loaned most of the funds necessary for financing the business. In 1937 the beneficiaries loaned approximately $51,000 to petitioner. The trust in no year used a seal or issued any type of certificate of interest or ownership. In 1934 the bookkeeping procedure was changed so that instead of crediting each beneficiary's invested capital account at the end of the year with his pro rata share of the profits a drawing account was set up for each beneficiary to which was debited the beneficiary withdrawals and to which was credited the beneficiaries' pro rata share of the profits. The beneficiaries never met to discuss the business of the trust between 1921 and 1932, nor did they so meet in the year 1937 or in the intervening years. The beneficiaries never transferred or conveyed their beneficial interests in the trust. The Commissioner mailed a notice *21 of deficiency to petitioner on March 12, 1941, and determined that it realized a taxable net gain for 1937 of $74,470 on the theory that petitioner was an association taxable as a corporation or that if petitioner were not an association it was a discretionary trust and taxable on the income not distributed. Opinion The first issue is whether petitioner is a trust for tax purposes or an association taxable as a corporation. If we assume first, that this issue is not res judicata as a result of the prior proceedings, [1] and second, that the undrawn accumulation of income represent voluntary contributions by the beneficiaries so that they have thereby become "associates" within the principle of the Morrissey case, [2] we are still unable to escape from the conclusive effect of the Living Funded Trust of Harry E. Lyman, 36 B.T.A. 161. There, as appears from the statement of fact, the beneficiaries also made contributions to the enterprise in amounts proportionately at least as large as those involved here, and at a time and under circumstances much more favorable to respondent's present contention. In virtually every other respect the facts *22 in the two cases are identical as the Board in effect concluded when it thought that "The facts of the instant case, in all material aspects, are similar to Guitar Trust Estate * * *." Yet the Commissioner acquiesced in the Board's determination in that proceeding, 1937-2 C.B. 17, and the acquiescence has never been withdrawn. We are satisfied that an orderly and equal administration of the revenue-collecting function requires that the determination of this question be controlled by the Lyman case. On this issue petitioner is sustained. *23 Although there are scattered hints in the other direction, respondent's brief contains explicit asscrtions that the income of this trust is currently distributable, and that its distribution is not discretionary with the trustees. This includes such statements as that "the instant trust is a distributable trust" and that "Because of the State court decision it now is clear that the beneficiaries can withdraw all income of the trust, for the trust is a distributive trust, not a discretionary trust as the prior cases assumed." We should have difficulty in any event in escaping from this conclusion since the State court ruled to that effect and its decision was later than the opinions of the Board and the Circuit Court of Appeals, Blair v. Commissioner, 300 U.S. 5, and Estate of George H. Balzereit, 46 B.T.A. 959, and, although it was subsequently brought to the Board's attention, no contested proceedings ensued and no litigated result was predicated upon it. Cf. Anna Eliza Masterson, 1 T.C. 315. It follows that petitioner was entitled to deduct as currently distributable whatever income *24 it received. Revenue Act of 1936, section 162(b). We consequently take the view that the deficiency was improvidently determined in its entirety. It becomes unnecessary to consider whether the trust had income in excess of that reported, since in any event the beneficiaries and not the trust would bear the tax consequences if that were the fact. Guitar Trust Estate, supra, 25 B.T.A. 1213, 1230. Decision will be entered for petitioner. Footnotes
1. See Engineers' Club of Philadelphia v. The United States (Ct. Cl. 1942), 95 Ct. Cl. 42, 42 Fed. Supp. 182; Oriswold, Res Judicata in Federal Tax Cases, 46 Yale Law Journal, 1320, 1357; but cf. Pryor & Lockhard Development Company, 34 B.T.A. 687↩. 2. "'Association' implies associates * * * This is not the characteristic of an ordinary trust - * * * Such beneficiaries do not ordinarily, and as mere cestuis cue trustent, plan a common effort or enter into a combination for the conduct of a business enterprise." Morrissey v. Commissioner, 296 U.S. 344, 356↩.