GEORGE T. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40321.   Promulgated December 17, 1930.

*W. W. Spalding, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* and *Owen W. Swecker, Esq.,* for the respondent,

## OPINION.

SMITH: The controversy here arises with respect to the base to be used in computing the petitioner's profit or loss upon the sale of the 200 shares of stock of the Joseph Dixon Crucible Co. in 1924. The petitioner had purchased the stock prior to March 1, 1913, and it

had a fair market value at that date of $312.50 per share. In 1914 the Joseph Dixon Crucible Co. declared a dividend of 100 per cent. In 1920 it declared another dividend of 150 per cent, which the petitioner and the respondent agree was a stock dividend which served to reduce the base to $125 per share. The question now arises as to whether the 100 per cent dividend declared and paid by the corporation in 1914, under the circumstances above described, was a cash dividend or a stock dividend which served to further reduce the base to $62.50 per share.

In support of his position that the 1914 dividend was a stock dividend, the respondent, in his brief, relies upon *Eisner* v. *Macomber*, 252 U. S. 189; *United States* v. *Mellon*, 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465; affd., 9 Fed. (2d) 1022; certiorari denied April 26, 1926; and certain decisions of the Board. The petitioner in his brief cites *W. J. Hunt*, 5 B. T. A. 356, and *J. E. Brading*, 17 B. T. A. 436.

None of these cases can be considered as controlling in this proceeding, however, for the reason that the question presented, viz., whether the distribution made by the Joseph Dixon Crucible Co. in 1914 was, with respect to the petitioner's participation, a stock dividend or a cash dividend, is one of fact to be determined upon the evidence before us. *W. J. Hunt, supra.*

The facts here differ materially from those found in either the *Hunt* case or the *Brading* case. For instance, in the *Hunt* case the stockholders had agreed, independently of any corporate action, prior to the declaration of the dividend that they would pay back into the company a part of the proceeds of the dividend by a simultaneous exchange of checks. In the instant case, the company by corporate action and as a part of the same resolution authorizing the declaration of the dividend made it a condition precedent thereto that at least 90 per cent of the stockholders would subscribe for new stock to the par value of their present holdings and the equivalent of their pro rata parts of the proposed 100 per cent dividend. In our opinion in the *Hunt* case we said:

In this case, even if it be conceded that the individual members of the board of directors could have legally bound the corporation, it is not alleged by any witness that the agreement referred to was other than an agreement between the stockholders, those who were to receive the dividends, and it related to what they would do with their dividends and not to the manner in which the corporation would distribute the dividends. There is no evidence that the directors as such undertook to act for the corporation. The resolution declaring the dividend did not recognize any such agreement as having been made. It is true that the corporation may have acted and very likely did act upon the assumption that the stockholders, in accordance with the agreement among themselves, would purchase stock with their dividends, but this is not sufficient to change what was declared by the corporation to be a cash dividend to a stock dividend. The stockholders were not legally bound to take stock.

In the *Brading* case, the corporation in 1920, pursuant to a resolution of the stockholders, increased its capital stock 100 per cent and issued to each of the four stockholders his proportionate part of the new stock. The shares of stock were charged in the company's books to each stockholder and the indebtedness was " to be liquidated by dividends now due and hereafter to become due, or in such manner as the Board may hereafter direct." We held under those circumstances that a dividend of 25 per cent declared in 1922 to be paid out of the surplus and credited to the stockholders' accounts was taxable to the stockholders as a cash dividend received in that year. In that case the liability of the stockholders for the new stock was fixed and definite more than a year before any dividend was declared by the corporation. The company was not bound by any corporate act to apply the dividend to the stockholders' accounts. The sale of the new stock to the stockholders and the payment of the dividend were separate and independent acts of the corporation. In the instant case the issuance of the new stock and the payment of the dividend were authorized by the same resolution and were dependent one upon the other. The subscription for the new stock was a condition precedent to the payment of the dividend.

In *Eisner* v. *Macomber, supra,* the principal question before the court was whether a stockholder is taxable upon the receipt of a *bona fide* stock dividend. The case is helpful here only as it may aid in distinguishing between a stock dividend and a cash dividend. In its opinion, the court said:

A " stock dividend " shows that the company's accumulated profits have been capitalized, instead of distributed to the stockholders or retained as surplus available for distribution in money or in kind should opportunity offer. * * *

The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment. * * *

In *United States* v. *Mellon, supra,* where the facts were somewhat similar to those in the instant case, the court held that a stock dividend rather than a cash taxable dividend was received by the taxpayer. The court in its opinion said:

From all of this it is quite evident that all of the acts of the company, whether called issues of stock or declarations of dividend, were in fact and reality a refinancing of the corporation, in which this defendant and other large stockholders bound themselves to pay, and in fact did pay, into the company's treasury the additional capital which it required. Their position was not that of having an option to take stock or to take money, but it was an obligation to take stock for which they agreed to pay. * * *

788

Under a similar set of facts, the court found in *United States* v. *Davison, supra,* that a stock dividend rather than a cash dividend was received by the taxpayer, saying in part:

\* \* \* If the purpose of the corporation is to retain the accumulated profits, while in effect distributing them as a dividend, it would seem immaterial whether the stock was issued direct or the stockholder given the right to apply the cash dividend declared in payment of the new stock, as the effect in the two cases would be precisely the same. In either case, the accumulated profits are legally retained for corporate purposes. In neither case has the stockholder received anything out of the company's assets for his individual use. On the other hand, his original investment and its accumulations, still remain the property of the company and subject to the hazards of its business. In fact, he has not received that which may be properly designated income. \* \* \*

From a consideration of all of the facts in this case, we are convinced that the intent and purpose of the corporation which the petitioner urges should be given due consideration were to retain its accumulated profits for corporate purposes and to increase its capital rather than to pay out its surplus to the stockholders for their separate use and benefit. After all of the provisions of the resolution authorizing the dividend had been carried out, both the corporation and the stockholders were in the same position as if the surplus on hand had been capitalized and a straight 100 per cent stock dividend declared. In no event did the resolution authorize the corporation to distribute more than a 10 per cent cash dividend above the amount that was required to be paid back into the corporation's capital.

The petitioner contends that since only 90 per cent of the stockholders were required to subscribe for new stock and since he owned less than 10 per cent of the outstanding stock he had the option of accepting either cash or new stock. It does not appear, however, that the petitioner had any option or privilege not enjoyed by all of the other stockholders. Manifestly, had all of the stockholders or even more than 10 per cent of them elected to choose cash instead of stock there would have been no dividend at all. There is no showing that 90 per cent of the stockholders had subscribed for their stock prior to the time that the petitioner, allegedly, exercised his option.

But granting, for the sake of argument, that the petitioner did have the option of accepting a cash dividend, the facts are that he did not elect to do so, but that he, along with the other stockholders, executed the power of attorney authorizing payment for his new stock subscription with the proceeds of the dividend. The petitioner by the transaction paid in no new capital to the corporation and received nothing from the corporation for his separate use and enjoyment.

Considering the intent and purpose of the corporation as well as as the acts of the parties to the transaction, we are of the opinion that the facts support the respondent's determination that the dividend was a stock dividend resulting in a dilution of the shares of stock then outstanding.

Reviewed by the Board.

*Judgment will be entered for the respondent.*