JOSEPH PAPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DAVID PAPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59040, 64744. Promulgated December 12, 1933.

*Francis D. Butler, Esq.,* and *Thomas J. Shannon, C.P.A.,* for the petitioners.

*James K. Polk, Jr., Esq.,* for the respondent.

LANSDON: These petitioners have appealed from the respondent's determinations of their income taxes for the year 1929. Each also asks affirmative relief in the way of refunds for alleged overpayments of taxes in the year reviewed. The items in dispute are, in Docket No. 59040, taxes, $677.52, and refund claims, $161.60; in Docket No. 64749, taxes, $168.75, and refund claim, $32.75.

The sole issue is whether or not the respondent committed error in holding the petitioners taxable for dividends paid in the stock of a family corporation known as Paper, Calmenson & Co., hereinafter referred to in these proceedings as "the corporation." The petitioners are and were in the tax year stockholders and managing officers of the corporation, which had 5,000 shares of common and 2,550 shares of preferred stock outstanding. Of these shares, 3,522 of the common and 1,108 of the preferred stock were owned by petitioners' mother, who depended upon dividends thereon for her sole support. Because of the needs of this stockholder, the petitioners, who controlled the corporation's board of directors, adopted a plan of declaring yearly dividends and paying their mother's portion of them in cash, but accepting the corporation's preferred stock in payment of their interest in them. At the end of the year 1928 the corporation had on hand a balance of earned surplus subject to distribution among its stockholders, and on February 18, 1929, pursuant to custom and an understanding that they would accept the corporation's preferred stock in lieu of cash, its board of directors met and passed the following resolution:

Resolved, that a dividend of 6 percent on the outstanding common stock of the corporation be, and the same hereby is, declared out of the surplus earnings of the corporation, said dividend to be payable to the holders of such stock of record at the close of business on the 31st day of December, 1928. That a dividend of 7 percent on the outstanding preferred stock of the corporation be, and the same is, hereby declared out of the surplus earnings of the corporation, said dividend to be payable to the holders of such stock of record at the close of business on the 31st day of December, 1928.

Be it further resolved, that said dividend on the common and preferred stock of the corporation, be paid at the option of the individual stockholders, either in cash or in preferred stock of the corporation.

The authorized dividends, following this corporate action, accruing to petitioners' mother were paid to her in cash, and those due the petitioners were paid in preferred stock of the corporation in the respective amounts of 108 and 31 shares and in cash in the respective amounts of $31 and $14.

In their respective income tax returns for 1928 each petitioner reported the stock received as dividends upon his common stock as

income, but excluded the shares received as dividends on his preferred stock.

The respondent held that all of the stock received by the petitioners as aforesaid constituted income taxable to them as corporate dividends and added the omitted shares to their gross income in computing their surtax. The petitioners now contend that none of the stock received from that dividend should be taxed, and ask us to overrule the respondent's determination and also to hold that they are entitled to a refund of taxes paid on the stock erroneously reported in their returns.

The petitioners base their claims upon the decision in *Jackson* v. *Commissioner*, 51 Fed. (2d) 650, which involved facts similar in some respects to those here considered.

We have carefully considered that case and find it on all fours with the facts in the case at bar, with one important exception—in the *Jackson* case practically all of the dividends were liquidated with the stock of the declarant corporation and only a scattering few of "employee" stockholders were paid in cash. The court, in the review, seems to have considered the cash payments too trivial to affect the substance of the transaction, and in considering that phase of the situation it said:

Jackson and the Crellins, after the stock was issued to them, held no greater proportion of the assets of the corporation than they did before as to the January dividend, because Whitacre and Smith also turned back their dividend checks for stock, so that all stockholders, after the January dividend, held the same proportion as before. After the August dividend was declared, however, some few of the employees elected to take cash instead of shares of stock. As is shown in the Board's findings, that stock was not of the same class as that owned by Jackson and the Crellins but was "Employees Stock."

\* \* \* The issues raised in these cases have all been considered and decided adversely to the respondent's contentions by this court in the case of *United States* v. *Mellon*, 281 F. 645, and *United States* v. *Davison*, 9 F. (2d) 1022, certiorari denied 271 U.S. 670, 46 S.Ct. 484, 70 L.Ed. 1143.

The case of *United States* v. *Mellon, supra,* is also cited; but the facts there are also different from those involved here in that the declarant corporation there paid all stock and no cash in discharging its dividend obligation. Mellon and his associates took, in addition to the shares due them, the shares of the small stockholders who desired cash, and paid them the cash. These facts, the court there held, left the taxpayers' relationship to the corporation's assets exactly as they were before, and brought them within the rule laid down in the much cited case of *Eisner* v. *Macomber*, 252 U.S. 189.

Going back to the case at bar, these petitioners were minority stockholders and owned between them less than one half of the corporation's stock at the time the dividends here involved were

declared and paid. Their mother, who received her dividends in cash, owned more than 70 percent of all of the corporation's common stock and in excess of 40 percent of its preferred stock. These facts, we think, are sufficient to distinguish the present case from those which the petitioners cite as authority for their contentions here urged.

The attribute of stock dividends, proper, which renders them tax free, lies in the fact that they take nothing out of the assets of the corporation and do not increase the relative holdings of its stockholders. Their only effect is to divide up the corporation's capital into smaller title units and to increase the stockholders' title tokens by which their interests are evidenced. *Towne* v. *Eisner*, 245 U.S. 418; *Gibbons* v. *Mahon*, 136 U.S. 549; *Logan County* v. *United States*, 169 U.S. 255.

We do not think it will be seriously contended in this case that the corporation's surplus was not affected by the cash withdrawal made by its major stockholder; or that the petitioners' interests in the corporation were not proportionately increased in the process followed. Before the distribution of the dividends the petitioners owned 1,308 shares of the corporation's common and 1,271 shares of its preferred stock. As a result of the distribution they increased these holdings by 139 shares of preferred stock. These certificates increased the petitioners' capital assets proportionately as their mother's interest in the corporation decreased. Their gains, therefore, in the distribution of the corporation's earnings were real and constituted income taxable to the petitioners as corporation dividends. *W. J. Hunt*, 5 B.T.A. 356; *Tillotson Mfg. Co.*, 27 B.T.A. 913.

Reviewed by the Board.

*Decision will be entered under Rule 50.*