L. ELMER WOOD, JAMES E. OSBORN, JOHN S. BRAYTON, ADMINISTRATORS FOR ESTATE OF SOLOMON WOODWARD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43971. Promulgated January 11, 1934.

*Frank J. Albus*, Esq., and *James V. Giblin*, C.P.A., for the petitioners.

*C. A. Ray*, Esq., and *Prew Savoy*, Esq., for the respondent.

OPINION.

SMITH: The respondent has determined a deficiency in the decedent's income tax for the calendar year 1924 of $9,672.44. The question in issue is whether the decedent received taxable income from a dividend upon his preferred shares of stock which he elected to receive in the form of additional preferred shares to the extent of $28,100.

The decedent in 1924 was a substantial stockholder in the Woodward Iron Co., a Delaware corporation engaged in business in Alabama. Under date of June 20, 1924, the board of directors of the company passed a resolution providing in part that:

WHEREAS, The total authorized capital stock of the Woodward Iron Company is now Thirteen Million Dollars, divided into 130,000 shares, each share being of the par or face value of $100.00, all of which stock has been issued and is outstanding, of which stock one hundred thousand shares is common stock, and of which stock thirty thousand shares is preferred cumulative dividend bearing stock, entitled to dividends payable quarterly, at the rate of 6% per annum, and

WHEREAS, The cumulative and unpaid dividends on the said preferred stock up to July 1st, 1924, will amount approximately to Four Hundred and Five Thousand Dollars, and the company has accumulated net earnings more than sufficient to pay and discharge all dividends in arrears on said preferred stock up to July 1st, 1924, but has been using said net earnings as a working capital, and

WHEREAS, The Board of Directors deem it advisable and to the interest of the company and all of the stockholders thereof that dividends and arrears of dividends on the preferred stock should be paid from the net earnings of the company up to April 1st, 1924, and contemporaneous the working capital of the company should be kept intact by sale of the preferred stock of the corporation which would necessitate an amendment of the certificate of incorporation or charter of the company, increasing the authorized capital stock of the company in the amount of Four Hundred and Five Thousand Dollars, and

WHEREAS, In order to sell the increased stock at par, in the opinion of the Board, it will be necessary to issue said stock as preferred stock, entitled to Cumulative Dividends, at the rate of 7% per annum, payable quarterly, from April 1st, 1924, and other than the rate of dividends in all respects on an equality with the preferred stock heretofore issued by the company and outstanding,

THEREFORE BE IT RESOLVED:

1.—That the Board of Directors hereby declare it is advisable and to the interest of the company and the stockholders thereof, for the certificate of incorporation or charter of the company, to be amended.

It was further provided that the corporation should amend its charter so as to increase its capital to the extent of $405,000 by the issuance of $4,050 additional shares of class A preferred stock. The resolution then provided:

3.—That a meeting of the stockholders of the company be and the same is hereby called to be held at the office of the company, at Woodward, in Jefferson County, Alabama, on the 8th day of July, 1924, at 12:00 o'clock

Noon, for the consideration of the proposed amendment, and said meeting shall be called and held upon such notice as the corporation's charter or by-laws provide.

4.—That if at said meeting, or any adjournment thereof, the stockholders in person or by proxy, holding a majority of the common stock entitled to vote and represented at said meeting, and the stockholders holding a majority of the preferred stock entitled to vote and represented at said meeting, vote in favor of said proposed amendment, the judges and officers of the company shall make all certificates, file all papers, and do all things required by law to effectuate the amendment of the certificate of incorporation, or charter of the company, as proposed by the board and approved by the stockholders.

5.—That F. E. Curtis and Frank E. Carlton, Jr., are hereby appointed judges to conduct the vote, as required by law, at said meeting, or any adjournment thereof.

6.—That in the event the charter is amended as herein recommended by the Board, the officers are authorized to sell the entire authorized amount of Class "A" preferred stock, and each stockholder of the company holding common and or preferred stock, shall be entitled to subscribe to the new or class "A" preferred stock, at any time within 30 days from the date the charter is amended, each subscriber to pay to the corporation, within 40 days from the amendment to the charter One Hundred Dollars per share (the par value of each share being One Hundred Dollars) and earned dividends thereon from July 1st, 1924, on the shares allotted to subscribers. All subscriptions shall be subject to the rights of the corporation to allot to the subscribers ratably a less number of shares than the number subscribed for, if the total number of shares subscribed for exceeds the total number of shares authorized to be sold, such rights to reduce the allotment, however, to apply only to such number of the shares subscribed for as represent an excess over the above number of shares to which the subscriber would be entitled to subscribe on the basis of one share of new stock for approximately 32 shares of old stock (common and preferred) held.

If the total authorized issue of Class "A" preferred stock is not subscribed for, the officers may sell the unsubscribed-for part of said stock, at par, and accrued dividends, from July 1st to date of sale, provided, however, that no part of Class "A" preferred stock shall be sold on subscriptions of stockholders or otherwise, unless all of said stock is sold.

7.—In the event all of said "Class A" preferred stock is sold to stockholders, subscribers, or other persons, then after such sale is consummated, the officers of the company are authorized and directed to pay the stockholders of preferred stock issued by the company, accrued and unpaid dividends on the preferred stock up to and including dividends due July 1st, 1924, from the earnings of the company.

A letter was then sent to each and all of the stockholders of the Woodward Iron Co. under date of June 24, 1924, which provided in part:

If the amendment is adopted, the directors deem it advisable if all of Class "A" preferred stock can be sold at par, and earned dividends from July 1, 1924, to the time of the sale, to then pay from the net earnings of the company the dividends on the now existing preferred stock to April 1, 1924, the surplus of the company being kept intact by proceeds of sale from the

Class "A" preferred stock. If Class "A" preferred stock is sold, each stockholder will be given the privilege, within a time fixed, to subscribe for and purchase Class "A" preferred stock on approximately the basis of one share of Class "A" preferred stock for each thirty-two shares of all other stock owned by subscribers and issued by the company. The officers of the company being given the power to sell all or any portion of the Class "A" preferred stock not subscribed for by stockholders at par and earned dividends as above stated.

The Federal War Revenue Act imposes a tax of ten cents on each proxy. Unless advised by you to the contrary, we shall consider the return of the attached proxy, properly signed by you, as authority to us as your agent to affix and cancel the necessary revenue stamp in your behalf without expense to you.

The minutes of a special meeting of the stockholders held at Woodward, Alabama, on July 8, 1924, show that the amendment to the corporation charter recommended by the board of directors under date of June 20, 1924, was adopted. The charter was accordingly amended.

Under date of July 26, 1924, a letter was sent by the Woodward Iron Co. to " Mr. S. Woodward, c/o B. M. C. Durfee Trust Co., Fall River, Mass.," reading as follows:

Referring to communication sent you under date of July 18th, 1924, our records show past-due dividends on preferred stock standing in your name amounting to $28,107.00.

To assure payment of past-due dividends under the plan adopted by the stockholders, it is necessary that the entire issue of 405,000 shares of Class "A" Preferred Stock be sold. It is therefore suggested that the holders of Preferred stock subscribe for the entire issue of Class "A" Preferred Stock.

If only Preferred Stockholders subscribe for the new issue, your quota figures 281.07 shares. This being less than 281.50 shares, it will simplify matters if you will subscribe for only 281 shares, in which case check for $7.00, will be sent you to cover past-due dividends in excess of $28,100.

If any of the holders of Common Stock exercise their rights and subscribe for their quota of Class "A" Preferred Stock, your subscription for the new stock will, of course, be reduced in proportion.

Please advise us if this meets with your approval.

The decedent elected to receive 281 shares of class A preferred stock in part payment of the dividend due him, and within the year 1924 received the stock and a check for $7. In his income tax return for 1924 the decedent did not report any taxable income from the receipt of the $28,100 class A preferred stock, contending that the same represented a stock dividend to him. In the audit of the decedent's return the respondent added to the net income reported $28,100, representing the par value of the class A preferred stock thus received by the decedent, and determined the deficiency accordingly.

At the time of the payment of the $405,000 dividend on or about October 1, 1924, the Woodward Iron Co. had approximately 300

stockholders, including both common and preferred stockholders. A few of the preferred stockholders elected to receive cash, although a great majority subscribed for and received additional shares of preferred stock in payment of their dividend.

The income tax return of the Woodward Iron Co. for 1924 shows that the company had cash on hand at the beginning of the year of $1,193,560.51, and at the close of the year of $1,334,730.82. At the hearing of this proceeding it was stipulated that the cash on hand during the year 1924 held by the Woodward Iron Co. was approximately $1,300,000. It was further stipulated that the Woodward Iron Co. " actually declared a cash dividend in the amount of $405,000 and actually voted it on its minutes."

In this proceeding the petitioners contend that the dividend in question received in the amount of $28,100 was a stock dividend and not a taxable cash or property dividend. In making this contention they rely upon *United States* v. *Mellon*, 281 Fed. 645; *United States* v. *Davison*, 9 Fed. (2d) 1022; *Eisner* v. *Macomber*, 252 U.S. 189; and *Jackson* v. *Commissioner*, 51 Fed. (2d) 650. In the *Mellon*, *Davison*, and *Jackson* cases the courts held that under the circumstances which obtained therein the stockholders did not receive taxable income from the receipt of additional shares. The facts showed that the corporations were not in possession of funds with which to pay the dividends declared and that it was not within the contemplation of either the corporation or the shareholders that the dividends should be paid in cash. In *Eisner* v. *Macomber*, *supra*, it was held that a stockholder receiving a stock dividend did not receive taxable income.

We are of the opinion that the facts in the proceeding at bar are substantially different from those which obtained in any of the cases above referred to. The Woodward Iron Co. desired to pay off the accumulated preferred dividends. It declared a cash dividend for that purpose and each of the preferred stockholders, according to the stipulation, had an option to receive either cash or additional shares of preferred stock. Clearly the dividend that was declared was not a stock dividend. It was a cash dividend. As we stated in *Tillotson Mfg. Co.*, 27 B.T.A. 913:

* * * Not every dividend in stock is a stock dividend, *Peabody* v. *Eisner*, 247 U.S. 347; *United States* v. *Phellis*, 257 U.S. 156, nor is every stock dividend a dividend in stock, *Harry A. Brown*, 26 B.T.A. 901; cf. *W. Q. Wright*, 10 B.T.A. 806. Indeed a dividend declared in cash has been held to be in substance a tax-free stock dividend. *United States* v. *Mellon*, 279 Fed. 910; 281 Fed. 645; *United States* v. *Davison*, 1 Fed. (2d) 465; 9 Fed. (2d) 1022; *Irving Trust Co.* v. *United States*, 44 Fed. (2d) 246; cf. *W. J. Hunt*, 5 B.T.A. 356; *George T. Smith*, 21 B.T.A. 782. * * *

See also *Joseph Paper*, 29 B.T.A. 523.

> *Judgment will be entered for the respondent.*