GUITAR TRUST ESTATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 35102, 51432, 56931, 64535, 69665, 75823.

Promulgated August 4, 1936.

*J. S. Y. Ivins, Esq.*, and *Richard B. Barker, Esq.*, for the petitioner.

*F. R. Shearer, Esq.*, and *Irving M. Tullar, Esq.*, for the respondent.

## OPINION.

BLACK: ■ Before considering any of the other assignments of error, we will rule upon a contention made by petitioner which, if valid, would dispose of the proceedings in favor of petitioner without further consideration. Petitioner states the contention as follows:

The respondent has not met the burden of proof required of him to assert any deficiency in tax against the petitioner on the basis that the petitioner is taxable as a trust.

Petitioner calls our attention to the differences in the respective revenue acts between the computation of an individual's income and of the income of a corporation, and argues, since the respondent has determined petitioner's income on the ground that it was an association taxable as a corporation and since it is now settled that petitioner is a trust the net income of which, with certain specified exceptions, shall be computed in the same manner and on the same basis as in the case of an individual, that the respondent's original determination of net income in each proceeding is not entitled to be considered as being prima facie correct; that the burden was upon the respondent to establish *de novo* the correct net income of petitioner as a trust rather than as an association; and that, the respondent having made no attempt to assume such a burden, the Board should enter an order of no deficiency for all of the years involved.

The respondent contends that the net income as determined by him in the deficiency notices should be considered as being prima facie correct as a starting point, and that the burden is upon the party who alleges that such net income should either be increased or decreased.

In *Crocker* v. *Malley*, 249 U. S. 223, Alvah Crocker and four others, who were trustees under a certain declaration of trust, commenced an action in the District Court of the United States for the District of Massachusetts against John F. Malley, internal revenue collector, to recover the full $10,875.40 paid by plaintiffs as income taxes for 1913, 1914, and 1915, which had been collected by the Government upon the ground that plaintiffs were taxable at rates applicable to associations rather than at rates applicable to trusts. If the tax liability had been determined upon the latter ground, it would have amounted to only $1,321.33 instead of $10,875.40. The District Court, in an unreported opinion, agreed with the plaintiffs to the extent that the Government had erred in taxing them as an association, but refused to render plaintiffs a judgment for more than $9,554.07 on the ground that plaintiffs were taxable as a trust and were therefore not entitled to recover the $1,321.33 tax liability computed upon that basis. Both litigants took a writ of error to the First Circuit Court of Appeals. In his writ the collector claimed that the allowance of any recovery was error, while the trustees in their cross writ asserted that they were entitled to recover the full amount of $10,875.40 stated in their declaration. The Circuit Court (250 Fed. 817) reversed the judgment of the District Court and said that such a conclusion rendered it unnecessary to pass upon the question involved in the cross writ brought by the trustees. The Supreme Court granted a writ of certiorari, and,

after holding that the trustees were not taxable as an association, said:

Our view upon the main question opens a second one upon which the Circuit Court of Appeals did not have to pass. The District Court while it found for the plaintiffs, rules that the defendant was entitled to retain out of the sum received by him the amount of the tax that should have been paid as trustees. To this the plaintiffs took a cross writ of error to the Circuit Court of Appeals. There can be no question that although the plaintiffs escape the larger liability, there was probable cause for the defendant's act. The Commissioner of Internal Revenue rejected the plaintiff's claim, and the statute does not leave the matter clear. The recovery therefore will be from the United States. Rev. St. sec. 989 (Comp. St. sec. 1635). *The plaintiffs, as they themselves alleged in their claim, were the persons taxed, whether they were called an association or trustees.* They were taxed too much. If the United States retains from the amount received by it the amount that it should have received, it cannot recover that sum in a subsequent suit.

Judgment of the Circuit Court of Appeals reversed.

Judgment of the District Court affirmed. [Italics supplied.]

It is our opinion that petitioner in the instant proceedings remains in law the same "taxpayer" whether it be taxed at rates applicable to associations or at rates applicable to trusts. It is a separate taxable entity and the law determines the rates to be applied to its net taxable income. The law also provides how that net taxable income shall be determined, depending upon whether it is classed as a trust or classed as an association. *Crocker* v. *Malley, supra.* See also sections 2 (1) and (9), Revenue Act of 1921; 2 (a) (1) and (a) (9), Revenue Acts of 1924 and 1926; and 701 (a) (1) and (a) (13), Revenue Act of 1928. In other words, it is our opinion that the determination of whether petitioner is an association or a trust is simply one of the many elements that may be involved in the determination of the tax liability of a "taxpayer", like the determination of what constitutes income, allowable deductions, etc., and that the determination that petitioner is a trust rather than an association, or vice versa, does not have the legal effect of canceling the respondent's entire determination to such an extent as would compel him to proceed *de novo*. True, petitioner's net income as a trust may be different from its net income as an association. But it is also true that there are many items of income and deductions which would remain the same whether petitioner be taxed as a trust or as an association.

We hold therefore, that the net income as determined by the respondent in his several deficiency notices for the respective taxable years should be used as a starting point, and that the burden of proof is upon the party who alleges that such net income should either be increased or decreased. Petitioner's contentions to the contrary are denied.

■ The main issue, previously stated, will now be considered.

The original deed of trust, executed on December 30, 1921, provided in part as follows:

The said trustees shall make an accounting with the beneficiaries herein once each year during the term of this trust, and the trustees shall, at their option declare a dividend out of any profits that may have accrued to said estate, which may be paid to each of the beneficiaries herein named, or retained in the business as the trustees may determine.

There can be no question but that this original trust was a discretionary trust as to the distribution of income.

On January 10, 1923, the grantors of the original deed of trust attempted to cancel the above provision by the so-called supplement set out in full in our original report, 25 B. T. A. at page 1218. Although this so-called supplement is dated January 10, 1922, it was actually executed on January 10, 1923, and we so held in a memorandum opinion entered October 29, 1932, following a rehearing and the receipt of additional evidence on that point.

Prior to the court review, our final holding was that the rights and obligations of the parties must be determined by the original trust deed for 1922 and by the so-called supplement for all years subsequent to 1922. The Circuit Court, however, held that the grantors did not have the power to execute the so-called supplement, and, in its opinion, said:

* * * The supplementary deed of itself accomplished nothing unless to express a consent on the part of its signers to the annual distribution therein described. That there was any contract or transaction which was effectual as between the trustees and the beneficiaries to alter the trust so as to require an annual distribution of income by the trustees nowhere appears in the record. So far as the present evidence shows, the trust continued to be one in which the income was distributable in the discretion of the trustees. * * *

In other words, the Circuit Court held that the rights and obligations of the parties must be determined by the original trust deed for all years instead of only for 1922, unless upon the rehearing, thereafter granted by the court, the petitioner might prove that there was some contract or transaction which was effectual as between the trustees and the beneficiaries to alter the trust so as to require an annual distribution of income by the trustees. Upon rehearing in accordance with the mandate of the court, the evidence introduced, which will be summarized and discussed further on in this report, does not, in our opinion, prove the existence of any such "contract or transaction" as made the income mandatorily distributable. Therefore, for all the taxable years in question the trust was one "in which the income was distributable in the discretion of the trustees."

Upon the holding that the trust was one in which the income was distributable in the discretion of the trustees the Circuit Court

applied section 219 (c) of the Revenue Act of 1921 and section 219 (b) (3) of the Revenue Acts of 1924 and 1926 to the years 1922 to 1926, inclusive, and said: "The law on this point is thus the same for all the years here involved." We now have under consideration the additional years 1927 to 1931, inclusive. Although the year 1927 is controlled by the Revenue Act of 1926, the years 1928 to 1931, inclusive, are controlled by section 162 (c) of the Revenue Act of 1928. Since section 162 (c) is identical to section 219 (b) (3) of the Revenue Acts of 1924 and 1926, and since section 219 (c) of the Revenue Act of 1921 has been held to be the same as section 219 (b) (3) of the two subsequent acts, the applicable statutory law is the same for all the years now before us, and is as follows (quotation taken from the Revenue Act of 1928):

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

* * * * * * *

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

Was that portion of the trust income which was credited after the close of each year to the several beneficiaries' "invested capital" accounts "properly paid or credited" and therefore allowable as an additional deduction in computing the net income of the trust? In our original report as modified by our memorandum opinion we considered this question as being applicable only to the year 1922, and in answering the question for that year we held that the evidence then before us was not sufficient to show that the several beneficiaries had such a right to the said credits as would entitle the trust to deduct such amounts as having been "properly paid or credited" under the statute. Our reasons therefore begin with the last paragraph at the bottom of page 1227 (25 B. T. A.) and end with the citation of *Brown & Ives, Trustees*, on page 1229. Cf. *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356. The Fifth Circuit agreed with our holding as to the year 1922 upon the basis of the then present record, but thought that additional evidence should be taken, and, in so holding, it said:

The actual payments made to the beneficiaries during the several years were comparatively small. Each year a tenth of the net income was put to the credit of each beneficiary as "invested capital" along with his share of the original trust property. These entries do not purport on their face to be a

crediting for withdrawal equivalent to a distribution, but rather an addition to the original invested capital equivalent to an accumulation of the income. We do not think, however, that the entries are conclusive. The trustees, having power so to do, may have undertaken to carry out the direction of the invalid supplementary deed, and they appear in their tax returns to assert that the income was distributed. The evidence on the point is so meager and unsatisfactory that it is better that the case be reinvestigated as to the true facts attending the distribution of income and the effort to change the duties of the trustees in that regard. Under the present evidence we think the conclusions of the Board are not sustainable as to the years since 1922, and we sustain the petition to review with direction to reopen the whole case for further evidence on the contested matters of fact.

Petitioner at the rehearing introduced the testimony of its bookkeeper and four of the beneficiaries, three of whom were also the trustees.

John Guitar, Sr., occupied the threefold position of grantor, trustee, and beneficiary. He testified that he discussed the question of distribution with Mrs. Guitar and all the children, including the other two trustees, both at home and at the office late in December 1922, and decided that the income for 1922 should be distributed; that "Our intention was to have a distribution of these profits to the beneficiaries, and we wanted it carried out"; that "The trustees instructed Mr. Kean, the bookkeeper, to put it into effect, carry it out"; that these instructions were for every year; that all the beneficiaries were at liberty to draw against the credits that were made on the books; that he understood he could withdraw any of the income so credited; that this was true for all years; that it made no difference that the income was credited to accounts labeled invested capital; that he did not consider he could withdraw the original capital; that he included in his income tax returns the amounts credited to his account on the books of the trust; and that he thought the so-called supplement to the trust was valid for all years.

John Guitar, Jr., was both a trustee and beneficiary. He testified that a family discussion took place around Christmas in 1922, as his father had testified; that the intent of the three trustees was to have the bookkeeper "divide up the profits and place them to the credit of each beneficiary—one-tenth"; that he did not personally give the bookkeeper any instructions; that the beneficiaries left their shares of the income with the trust for the trust to invest; that the reason why the amounts credited were not actually withdrawn was because several of the children were going to school and did not need much money; that he was willing to leave his share with the trust and thought it was better than having it in the bank, but that he did not ask for interest on it; that his own salary was sufficient for himself; that it was his understanding that the bene-

ficiaries could draw whatever amounts they wanted at any time; that the books of the trust were always open so that the beneficiaries could look at them at any time; that he also reported all the amounts credited to his invested capital account as income in his individual returns for all years; that as trustee he carried out the provisions of the alleged supplement to the trust.

Repps Guitar was both a trustee and beneficiary. He testified that he lives at Big Springs, about one hundred miles west of Abilene; that he was at Abilene at Christmas in 1922 and remembers a family discussion of what should be done with the trust income for 1922; that "it was agreed by my father and all the rest of us children and the trustees, together, that the best thing to do was to divide this money up among all the children and the beneficiaries, and the only way to do it was to make an amendment"; that "We all decided that the best thing to do was to draw up an amendment to make this legal in dividing up the money so that they could spend the money and get the money any time they wanted to"; that the agreement for all years down to date was "that we would divide this money up to each and every one of them and put it on the books and they could get the money when they wanted it"; that the supplement to the trust truly expresses his understanding of the agreement made about Christmas, 1922; that he understood that he could personally draw against the credit to his account on the books; that he did not draw against the amount for the reason that his salary was sufficient to take care of all his needs; that it was a common understanding that the matter of declaring dividends would wait until the books were closed in the succeeding year; and that he filed returns for the years 1922 to 1931, inclusive, and included in these returns the income that was credited to his invested capital account on the books. This witness testified that none of the 10 beneficiaries had the right to withdraw his share of profits at the end of the year; that he had the right to withdraw only after the profits had been figured up and each had been credited with his share, which was always after the close of the year.

Earl B. Guitar was a beneficiary. He testified that there was a discussion around Christmas in 1922, at which time it was decided "that they would distribute these profits to us"; that it was his understanding that the beneficiaries could draw all of the profits that were made every year; that he withdrew small amounts in 1923, 1924, and 1925; that his salary started in 1926; and that he included as income in his individual tax returns for the years the amounts credited to his account.

L. M. Hembree was the bookkeeper who succeeded Kean. He testified that he had been employed since September 16, 1923; that

he made his first entries in 1924; that he received his instructions from Kean; that the annual net income was credited to "Invested capital, John Guitar, Sr.", etc., and a similar account for each of the other nine beneficiaries; that there were no drawing accounts except for those on salaries; that the trust borrowed money during the operating season; that the credits to invested capital accounts were carried on the balance sheets as invested capital rather than as accounts payable; that the books were closed all the way from March 1 to April 15 of each year following the year just closed; that the credits to the individual invested capital accounts were not put on the books until the books were closed as above stated; and that it was his impression that the actual book entries reflected all the instructions he had received.

We are satisfied from the above testimony that the trustees thought they were acting under the supposed authority of the so-called supplement. But, as previously expressed in this report, we do not regard this testimony as proving the existence of "any contract or transaction which was effectual as between the trustees and the beneficiaries to alter the trust so as to require an annual distribution of income by the trustees." We think that the provision of the original trust deed that "the trustees shall, at their option declare a dividend out of any profits that may have accrued" continued as the only legal authority for the action taken by the trustees; and that therefore the trust was one " in which the income was distributable in the discretion of the trustees." We think the matter which controls this decision, aside from the question as to whether the credits were made in the "proper" year, which we shall discuss later, is whether the credits to the invested capital accounts of the several beneficiaries were in fact placed beyond recall by the trustees so that the amounts credited actually ceased to be the property of the trust and became the property of the several beneficiaries. In *Lynchburg Trust & Savings Bank* v. *Commissioner, supra,* the Fourth Circuit, among other things, said:

\* \* \* The phrase "paid or credited" is used in opposition to the term "accumulated"; so that, the amount which is set aside for and made available to the beneficiary, either by actual payment or by credit, may be deducted, but the amount retained or accumulated forms part of the taxable income of the trust.

A similar construction of the same language in the corresponding sections 161 (a) and 162 (b) of the Revenue Act of 1928, 26 USCA sections 2161 (a), 2162 (b), was given by the Circuit Court of Appeals in the Second Circuit in *Commissioner* v. *Stearns,* 65 F. (2d) 371, 373. Speaking of the portions of the income respectively taxable to the fiduciary and the beneficiary, the court said:

"They should appear in the fiduciary's return, if they are still his; in the beneficiary's, only in case he has become presently entitled to them, or received them.

"This serves to determine what is meant by the word 'credited,' the alternative to 'paid', though we can find no authority on the point. The income must be so definitely allocated to the legatee as to be beyond recall; 'credit' for practical purposes is the equivalent of 'payment.' Therefore, a mere entry on the books of the fiduciary will not serve unless made in such circumstances that it can not be recalled."

Compare *Ordway* v. *Wilcutts* (D. C.) 12 F. (2d) 105; Id. (C. C. A.) 19 F. (2d) 917.

We agree with this interpretation, and hence we conclude * * * that the withheld income of the grandchildren may not be deducted in computing the net income of the trust estate as amounts credited to the grandchildren or their guardian. For although the moneys were *retained for the benefit of* the grandchildren and became part of the fund ultimately to be paid to them or to their descendants, or to the cross-remaindermen named in the will, they were not credited in the sense that they were made available to the grandchildren or their guardian during the current taxable year. Taxpayers generally are charged with income not reduced to possession, but only if it may be said that the income is received constructively, and has become so far subject to the taxpayer's demand that its non receipt is a matter of his own choice. [Citations.]

Weighing the testimony in this light, we do not believe that the crediting to invested capital account of the amounts in question on the books of the trust placed such amounts beyond recall by the trustees, or made the amounts so subject to the demand of the beneficiaries that the nonreceipt by the latter was a mere matter of the beneficiaries' own choice. True, the witnesses testified that they understood that the beneficiaries could withdraw any of the amounts so credited. But, as the Fifth Circuit said in the instant case, "It is not, however, the beliefs of the interested parties which control, but the terms of the trust instrument and the rightful acts of the fiduciary under it." In addition to the provision quoted elsewhere in this opinion, the original deed of trust also provided:

The beneficiaries hereunder will have no voice in the control and management of said estate, and they shall not mortgage or encumber their beneficial interest, or in anywise dispose of said interest until they have received same from the trustees.

In view of this provision of the original trust deed it does not seem to us that the several beneficiaries, several of whom were minor children at the time the trust deed was executed, could have exercised the rights of absolute ownership over the amounts which were merely credited to their invested capital accounts on the books of the trust and had not yet been actually received. Such amounts, as we view the situation, became an increase in their beneficial interests in the trust. But, even if we are wrong in holding that the crediting to "invested capital" account of the trust under the circumstances which we have narrated was not a "proper crediting" within the meaning of the applicable statute, we think there is still another

ground on which petitioner must lose. The applicable statute, which we have already quoted, provides that the trust shall be entitled to a deduction against its gross income for the taxable year of the portion of such gross income "which is properly paid or credited *during such year* to any legatee, heir or beneficiary." (Emphasis supplied.) No provision is made for deductions of payments made or credits made after the year has closed. Such payments or credits would not be taxable to the beneficiaries and would not be deductible to the trust. For example, in *Lynchburg Trust & Savings Bank, supra,* the court said: "For although the moneys were retained for the benefit of the grandchildren and became part of the fund ultimately to be paid to them or to their descendants, or to the cross remaindermen named in the will, they were not credited in the sense they were made available to the grandchildren or their guardian *during the current taxable year*." (Emphasis supplied.)

Certainly it would not be contended, for example, that income of the trust for the year 1922 which was not paid to the beneficiaries until the year 1923, would be a deduction to the trust in its income tax return for 1922 as income "paid" to the beneficiaries. There would be no more reason to contend that a crediting which admittedly was not made before March 1, 1923, would be deductible by the trust for the taxable year 1922. The court correctly pointed out in *Commissioner* v. *Stearns*, 65 Fed. (2d) 371, that "credit" for practical purposes is the equivalent of "payment."

Article 333 of Regulations 74 provides:

Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so *credited* or set apart, although not then actually reduced to possession. To constitute receipt in such a case, the income must be credited or set apart as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn, at any time, and its receipt brought within his own control and disposition * * *.

It is plain that section 219 of the several applicable acts and section 162 of the Revenue Act of 1928 mean to tax all the net income of the trust for the year in which it is earned, either to the trust or to the beneficiaries. The Supreme Court so held in *Helvering* v. *Butterworth*, 290 U. S. 365. In that case the Supreme Court said: "The evident general purpose of the statute was to tax in some way the whole income of all trust estates." As we have already pointed out, there would be no legal authority to tax income to a beneficiary of a discretionary trust which was neither paid nor credited to such beneficiary during the taxable year. Of course if under the terms of the trust distribution of income is mandatory, the income is taxable to the beneficiary whether distributed or not. The statute so requires.

As we view the facts in this case, the only way we could decide in favor of the petitioner on the main issue would be to hold that the trust is one in which it is mandatory upon the trustees to distribute the net income each year. As we have already stated, we do not think such a construction of the trust agreement under which the trustees acted justifies such a holding.

In several rulings the Bureau of Internal Revenue has held that *nunc pro tunc* crediting is not effective to meet the terms of the statute in such a situation as we have here. In T. B. R. 47, Cumulative Bulletin No. 1, p. 178, among other things it is said:

The conclusion reached is not open to the objection that it makes tax liability dependent upon bookkeeping entries. The crediting of income to a beneficiary of an estate, which is referred to in the statute, is more than the making of a mere bookkeeping entry—the recording of an existing fact. It is in itself an act which separates the income of the beneficiary from the income of the estate, and from the standpoint of the beneficiary, effects a realization of income by him. In the opinion of the Advisory Tax Board there must be a transferring of income to the control of the beneficiary if there is to be a crediting of income within the meaning of the statute. For somewhat analogous situations see article 53 of Regulations 45. The crediting of income is not, therefore, a mere formality and can not be omitted or done nunc pro tunc. It is unnecessary, however, in the present case to determine precisely what constitutes a crediting of income to a beneficiary since there is here no act which can in any event be so regarded.

While it is true that the ruling from which the above quotation is taken dealt with income of an estate during the period of administration, we think the reasoning is applicable to the income of discretionary trusts and is sound. It will be noted that section 162 (c) of the Revenue Act of 1928, already quoted in this opinion as representative of the law for all the taxable years, deals with income of estates during the period of administration and the income of discretionary trusts and treats both alike. Paul and Mertens, in Law of Federal Income Taxation, vol. 4, par. 34.112, say: "The crediting of income is not a mere bookkeeping entry or formality and cannot be done nunc pro tunc." Then in a footnote are cited several rulings of the Bureau of Internal Revenue, among which is the ruling from which we have taken the above quotation. As we have already stated, we think the reasoning back of these rulings is sound.

For the reasons which we have set out above, we do not think the decisions cited by petitioner relating to the charging off of bad debts after the year has closed are in point. These decisions cited by petitioner are *Rockwell Manufacturing Co.*, 19 B. T. A. 277, and *Loritan Investment Co.*, 21 B. T. A. 1412.

We therefore conclude that the amounts of income of the trust which were credited each year after the year had closed to the several beneficiaries' invested capital accounts were not "properly

paid or credited" within the meaning of those words as used in the taxing statutes, and that the said amounts are not allowable as additional deductions in computing the net income of the trust. Only the amounts which were actually paid are deductible. These amounts are not in dispute.

■ This issue involves assignment of errors (e), (f), and (g). Based upon the facts found in our findings we hold that, under section 214 (a) (1) of the Revenue Acts of 1924 and 1926, petitioner is entitled to deduct from its gross income for the years 1924, 1925, and 1926 the respective amounts of $420, $960, and $645. *George Ringler & Co.*, 10 B. T. A. 1134.

■ This issue involves assignment of error (h). Upon the facts found we sustain the respondent's determination on this point. *Killian Co.*, 20 B. T. A. 80, 85 (items 21 and 34). Cf. *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289.

■ The respondent has affirmatively alleged that since it is now settled that petitioner is taxable as a trust rather than as an association, the dividends received by petitioner from domestic corporations, which the respondent allowed petitioner to deduct from its gross income under section 234 (a) (6) of the Revenue Acts of 1921 and 1926, and section 23 (p) of the Revenue Act of 1928, should now be restored to petitioner's income. The several amounts were received by petitioner as set out in our findings. Under section 213 (a) (1) of the Revenue Acts of 1921 and 1926, and section 22 (a) of the Revenue Act of 1928, dividends are included as a part of gross income. The taxing statutes applicable to trusts do not allow dividends as deductions from gross income. The amounts previously allowed by the respondent will, therefore, be restored to income, with such modifications in the amounts as have been agreed upon in the stipulation.

■ This issue is substantially the same as the preceding one, except that it involves only the year 1930.

In determining petitioner's net income for 1930 the respondent included in gross income, and also allowed as a deduction under section 23 (p) of the Revenue Act of 1928, dividends of domestic corporations amounting to $43,106.55. In his amended answer the respondent avers that he erred by "erroneously allowing a deduction under section 23 (p) of the Revenue Act of 1928 of dividends amounting to $43,106.55." Petitioner in its reply denies that the respondent so erred and also alleges that $27,000 was a stock dividend and was not properly includable in petitioner's gross income.

In determining the deficiency for 1931, the respondent in computing the loss on the 2,000 shares treated 540 shares as having been

received as a "stock dividend", which is in accord with petitioner's contention relative to the $27,000 in question. Whether a dividend declared is a stock dividend or a cash dividend is a question of fact to be determined from all the circumstances. *Luthe Hardware Co.*, 6 B. T. A. 53. We think petitioner has proved by affirmative evidence that the $27,000 dividend in question was a stock dividend and not a cash dividend. Petitioner's proof on this subject brings the dividend in question within the rule announced by us in *George T. Smith*, 21 B. T. A. 782. Our holding on this issue renders it unnecessary to disturb the respondent's determination in 1931 that the 540 shares were received as a stock dividend.

7. The seventh issue involves assignment of error (c) in Docket No. 56931, for 1927. Petitioner alleges that respondent "erroneously increased petitioner's net income by disallowing accrued expenses in the sum of $7,637.29." In the statement attached to the deficiency notice the respondent explains the disallowance as follows:

This item consists of capital stock tax, penalties, and interest paid in year which are applicable to prior years. Since your books are kept on the accrual basis the items have been disallowed under the provisions of article 23 of regulations 69.

The items disallowed are:

| | |
|---|---:|
| Capital stock tax for years 1923, 1924, 1925, and 1926 | $5,360.00 |
| 25% penalties for years 1923 to 1926 | 1,339.50 |
| 5% penalties for years 1923 to 1926 | 335.00 |
| Interest accrued prior to January 1, 1927 | 602.79 |
| Total disallowed | 7,637.29 |

The parties have stipulated that if the Board should be of the opinion that any part or all of the sum of $7,637.29 is deductible in any of the years involved in these proceedings, such part or all may be allowed in such year or years without the filing first of amended pleadings for such year or years.

Petitioner was never liable for a capital stock tax. It would therefore be improper to accrue any liability for such a tax for the years 1923 to 1926, inclusive. Cf. *E. L. Bruce Co.*, 19 B. T. A. 777. The collection in 1927 was illegal. Immediately after payment in 1927 it filed claims for refund. These claims were rejected in 1928. It then brought a test suit for the year 1923. Had it been successful in the test suit it had, until October 6, 1932, to file suits for the other years. But it was not successful. On February 24, 1930, the United States District Court rendered judgment against petitioner and for the Government. Petitioner filed no appeal and made no further attempts to recover the amount it had erroneously paid in 1927. The time has now expired in which a valid claim or suit could be filed.

We think petitioner is entitled to deduct the amount in question as a loss or business expense for 1927, in which the illegal taxes, penalties, and interest were paid.

In *E. L. Bruce Co.*, *supra*, we held that the taxpayer was entitled to a deduction, either as a loss or a business expense, of an amount which the taxpayer paid in the taxable year under a state tax statute which was later declared to be unconstitutional. In that case we pointed out the distinction between the facts there stated and those present in *Philip C. Brown*, 10 B. T. A. 1122, as follows:

An objection might be made to the allowance of the deduction on the ground that it is in conflict with the principle laid down in *Philip C. Brown, et al*, *supra*, where a taxpayer was denied a deduction on account of taxes paid under an unconstitutional statute, but in that instance the amount had been refunded in a later year and we in effect held that the fact that the taxpayer had been made whole, though in a later year, precluded the allowance in the year when paid.

In the instant case no refund of the taxes has ever been made and, inasmuch as the statute of limitations has now barred the possibility of refund, we see no reason why, under the doctrine of the *Bruce* case, petitioner should not be allowed as a deduction for 1927 the amount of capital stock taxes, penalties, and interest paid in that year. True, the amounts here involved were not paid under an unconstitutional statute, but they were illegally collected from petitioner and the same reasoning which prompted the allowance of the deduction in the year in which the amounts were paid in the *Bruce* case we think also applies here.

On this issue we hold for petitioner. Cf. *Niagara Share Corporation of Maryland* v. *Commissioner*, 82 Fed. (2d) 208; *Commissioner* v. *Thatcher & Son*, 76 Fed. (2d) 900; *Mummert Lumber & Tie Co.*, 16 B. T. A. 1188. In the latter case we said: "We do not think that the possibility of recovery was sufficient to postpone the determination of the loss."

8. This issue involves assignment of error 8 (b) in Docket No. 69665 for 1930. Petitioner alleges that respondent erred "in finding that petitioner derived $14,600 profit from the sale of Hartline farm, whereas petitioner's profit on such sale was only $2,880.00."

The parties agree that the total selling price was $34,000; that the depreciated cost of the buildings on the land was $2,000; and that petitioner paid commissions in connection with the sale of $1,400. The respondent determined that the fair market value of the 400 acres on March 1, 1913, was $16,000 and that the profit on the sale was $14,600. Petitioner reported a profit of only $2,880 because of a claim of a higher March 1, 1913, value than the Commissioner allowed. The respondent offered no proof.

In our findings we found as a fact that the fair market value on March 1, 1913, of the 400 acre tract sold in 1930 was $62.50 per acre, or a total value of $25,000. We believe the evidence offered by petitioner is sufficient to establish that value.

The deficiencies will be recomputed in accordance with this report.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

LEECH and TYSON concur in the result.